UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY,<br>　　Plaintiff, | §<br>§<br>§ | |
| V. | §<br>§ | CIVIL ACTION NO. _____ 1:17-cv-0934 |
| AMERICAN MERCURY INSURANCE<br>COMPANY,<br>　　Defendant. | §<br>§<br>§<br>§ | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Plaintiff, Scottsdale Insurance Company ("Scottsdale"), and files this Original Complaint as Subrogee of M.G. Neans Masonry, Inc. a/k/a/ Neans Masonry, Inc. ("Neans") against Defendant, American Mercury Insurance Company ("Mercury"), showing this Court as follows:

### I.
### PARTIES

1.　　Plaintiff, Scottsdale, is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in the State of Arizona.

2.　　Defendant, Mercury, is an insurance company formed under the laws of the State of Oklahoma with its principal place of business in Oklahoma City, Oklahoma. Mercury can be served with process by serving its registered agent CT Corporation System, 350 North St. Paul Street, Dallas, TX 75201.

### II.
### VENUE AND JURISDICTION

3.　　Jurisdiction in this matter is based upon diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(1) and (2) because: (A) Plaintiff and Defendant are citizens of different states; and (B) the amount in controversy, including the costs incurred by Scottsdale in defending and

indemnifying Neans in connection with the underlying construction defect lawsuit, as set forth below, exceeds $75,000, exclusive of interest and costs.

4. This court has authority to declare the rights and obligations of the parties under the terms and provisions of the insurance policies at issue in this lawsuit, as provided by 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure, as an actual and justiciable controversy exists between the parties hereto.

5. Venue is properly placed in the Western District, Austin Division, under 28 U.S.C. § 1391.

## III.
## BACKGROUND FACTS

### A. Overview

6. This insurance coverage lawsuit arises out of an underlying residential construction defect lawsuit against Continental Homes and several of its subcontractors, including Neans, who allegedly performed defective work in connection with one of Continental Homes' condominium complexes in the Austin, Texas area. Because Scottsdale paid the defense and indemnity on behalf of its insured Neans, for which Mercury was primarily responsible, Scottsdale has an automatic right of subrogation of Neans' claims.

### B. Avery Ranch Project and the Subcontractors

7. Continental Homes developed a condominium complex in Travis County, Texas called the Commons at Avery Ranch Condominiums ("Avery Ranch Project").

8. Continental Homes retained various subcontractors to perform all of the construction on the Avery Ranch Project. Each subcontractor, pursuant to the terms of the subcontract governing its work for Continental Homes, purchased general liability insurance policies naming Continental Homes as an Additional Insured on those policies for liability

arising out of the subcontractor's work.

9. Continental Homes contracted with Neans to perform masonry work on the Avery Ranch Project. Neans, in turn, retained various subcontractors to perform the masonry work. Each of these subcontractors, pursuant to the terms of the subcontract governing its work for Neans, purchased general liability insurance policies naming Neans as an Additional Insured on those policies for liability arising out of the subcontractor's work.

### C. The Insurance Policies

10. Scottsdale issued the following Commercial General Liability policies to Neans:

- Policy No. CLS1364382, for the period of April 14, 2007, to April 14, 2008;
- Policy No. CLS1483043, for the period of April 14, 2008, to April 14, 2009;
- Policy No. CLS1568981, for the period of April 14, 2009, to April 14, 2010;
- Policy No. CPS1188556, for the period of April 14, 2010, to April 14, 2011; and
- Policy No. CPS1364432, for the period of April 14, 2011, to April 14, 2012 (collectively referred to as the "Policies");

11. The Scottsdale Policies contain Commercial General Liability Coverage Form CG 00 01 12 07, which provides in relevant part:

### SECTION I — COVERAGES
### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.

\*\*\*

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

\*\*\*

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

**b. Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

\*\*\*

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an Additional Insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

> We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

***

12. The policies for the subcontractors ("Subcontractor Policies") that performed the masonry work at issue in the underlying construction defect suit are set forth below:

13. ***Arturo Gomez d/b/a Gomez Masonry*** —Neans contracted with Arturo Gomez d/b/a Gomez Masonry ("Gomez Masonry") to perform masonry work on the Avery Ranch Project. Gomez Masonry was also hired as the General Contractor to manage Neans' other subcontractors (listed below) performing masonry work on the Avery Ranch Project. Gomez Masonry procured the following policies adding Neans as an Additional Insured:

- Mercury issued to Gomez Masonry policy number TAR7007069, for the period of August 13, 2002 to August 13, 2014.

14. ***Jose Guerrero d/b/a Guerrero Masonry***—Neans contracted with Jose Guerrero d/b/a Guerrero Masonry ("Guerrero Masonry") to perform masonry work on the Avery Ranch Project. Guerrero Masonry procured the following policies adding Neans as an Additional Insured:

- Mercury issued to Guerrero Masonry policy number TAR7037633, for the periods of November 4, 2010 to November 4, 2011.

15. ***Salomon Mata***—Neans contracted with Salomon Mata ("Mata") to perform masonry work on the Avery Ranch Project. Mata procured the following policies adding Neans as an Additional Insured:

- Mercury issued to Mata policy number TAR7035365, for the period of April 9, 2008 to April 9, 2009, and policy number TAR7036840, for the period of April 9, 2010 to

April 9, 2011.

16. ***Juan Reyes***—Neans contracted with Juan Reyes ("Reyes") to perform masonry work on the Avery Ranch Project. Reyes procured the following policies adding Neans as an Additional Insured:

- Mercury issued to Reyes policy number TAR7037073, for the period of August 26, 2009 to August 26, 2010, and policy number TAR7037595, for the period of September 23, 2010 to September 23, 2011.

17. ***Servando Guerrero***—Neans contracted with Servando Guerrero ("Guerrero") to perform masonry work on the Avery Ranch Project. Guerrero procured the following policies adding Neans as an Additional Insured:

- Mercury issued to Guerrero policy number TAR7036184, for the period of April 10, 2008 to April 10, 2009.

18. ***Fred Vanwhy***—Neans contracted with Fred Vanwhy ("Vanwhy") to perform masonry work on the Avery Ranch Project. Vanwhy procured the following policies adding Neans as an Additional Insured:

- Mercury issued to Vanwhy policy number TAR7031363, for the period of August 25, 2006 to August 25, 2011.

19. ***Juan Pablo Orduna Garcia***—Neans contracted with Juan Pablo Orduna Garcia ("Garcia") to perform masonry work on the Avery Ranch Project. Canales procured the following policies adding Neans as an Additional Insured:

- Mercury issued to Canales policy number TAR7036182, for the period of April 2, 2008 to April 2, 2009.

20. ***Pedro Rivera Juarez***—Neans contracted with Pedro Rivera Juarez ("Juarez") to

perform masonry work on the Avery Ranch Project. Juarez procured the following policies adding Neans as an Additional Insured:

- Mercury issued to Juarez policy number TAR7036831, for the period of April 3, 2009 to April 3, 2010, and policy number TAR7037481, for the period of June 18, 2010 to June 18, 2011.

21. ***Antonio Martinez*** —Neans contracted with Antonio Martinez ("Martinez") to perform masonry work on the Avery Ranch Project. Canales procured the following policies adding Neans as an Additional Insured:

- Mercury issued to Martinez policy number TAR7030713, for the period of April 6, 2008 to April 6, 2009.

22. The Subcontractor Policies contain Commercial General Liability Coverage Form CG 00 01 10 93, which provides in relevant part:

> **SECTION I — COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
>    (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and
>    (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>
>    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS — COVERAGES A AND B.

    b. This insurance applies to "bodily injury" and "property damage" only if:
       (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
       (2) The "bodily injury" or "property damage" occurs during the policy period.

***

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

***

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

  **a. Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

  **b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:
    (1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
    (2) That is Fire Insurance for premises rented to you; or
    (3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
    (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
    (2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

\*\*\*

23. The Subcontractor Policies also contain Additional Insured – Owners endorsement CG 20 10 10 93[1], which provides in relevant part:

> WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

\*\*\*

24. The Scottsdale Policies indicate that the insurance provided is excess over "Any other primary insurance available to [Neans] covering liability for damages arising out of the premise or operations, or the production and completed operations, for which [Neans has] been added as an additional insured by attachment of an endorsement." All of the Subcontractor Policies added Neans as an Additional Insured.

25. The Subcontractor Policies indicate that the insurance provided is primary except in three narrow circumstances, none of which are applicable here. Thus, based upon the language in the Scottsdale and Subcontractor Policies, Mercury is Neans' primary insurer with respect to the *Avery Ranch* Litigation and Scottsdale is Neans' excess insurer with respect to the *Avery Ranch* Litigation.

26. The Scottsdale Policies further provide that "When this insurance is excess, [Scottsdale] will have no duty . . . to defend . . . if any other insurer has a duty to defend . . . ." However, "[i]f no other insurer defends, [Scottsdale] will undertake to do so, but we will be entitled to the insured's rights against all those other insurers."

---

[1] The Declaration pages of the Gomez Masonry policies are unclear about which version of the CG 20 10 Additional Insured endorsement is included, if any, as it only refers to the form number CG 20 10. However, the form was never actually attached to the Policy.

27. Because Scottsdale is Neans' excess insurer with respect to the *Avery Ranch* Litigation, the Scottsdale Policies provide that "[Scottsdale] will pay only our share of the amount of loss, if any, that exceeds the sum of: (a) The total amount that all such other insurance would pay for the loss . . .; and (b) The total of all deductible and self-insured amounts under all that other insurance."

**D. Avery Ranch Litigation**

28. In 2015, the Avery Ranch Condominium Community, Inc. (the "Association") sued Continental Homes in Travis County in a lawsuit styled *Avery Ranch Condominium Community, Inc. v. Continental Homes of Texas, L.P., CHTEX of Texas, Inc., and D.R. Horton, Inc.,* Cause No. 15-0850-C277 in the 277th Judicial District Court, Williamson County, Texas, and the court subsequently compelled the lawsuit to arbitration ("*Avery Ranch* Litigation"). In its First Amended Petition, filed in the arbitration proceeding, the Association alleges that the Avery Ranch Project contains a number of construction defects resulting in damage to property. The Association asserts causes of action against Continental Homes for negligence, negligence *per se,* negligent hiring/retention/supervision, breach of implied warranty, breach of fiduciary duty, negligent misrepresentation, and violations of the Deceptive Trade Practices Act.

29. Throughout its pleading, the Association complains of the work of Continental Homes' subcontractors with respect to the alleged defective components and resulting damage. Continental Homes filed a third-party petition in which Continental Homes brought breach of contract and contractual indemnity causes of action against Neans and other subcontractors as the entities that performed the work alleged by the Association to be defective.

**E. Tender of the *Avery Ranch* Litigation**

30. Neans timely tendered the *Avery Ranch* Litigation to Mercury, its subcontractors'

carrier, requesting that it acknowledge Neans' status as an Additional Insured on the Subcontractor Policies. Despite the request that Mercury acknowledge Neans' status as an Additional Insured and the rights and obligations flowing therefrom, Mercury refused to defend or indemnify Neans in the *Avery Ranch* Litigation.

31. Mercury erroneously denied the tender stating that the allegations in the *Avery Ranch* Litigation complained of damages arising out of completed operations and the additional insured endorsement only provided coverage for on-going operations. However, the CG 20 10 10 93 endorsement contained in the Subcontractor Policies has been found to be ambiguous because a reasonable person could interpret the language "arising out of [Neans' subcontractor's] ongoing operations" as embracing either: (1) any liability arising while Neans' subcontractors were working on the Avery Ranch Project; or (2) liability arising, at least in part, from Neans' subcontractor's actual performance of work on the Avery Ranch Project. Texas law resolves ambiguities in insurance policies in favor of the insured, in this case Neans. Thus, to seek coverage under the Subcontractor Policies, Neans need only demonstrate that its legal obligation to pay ("its liability") for injury or damage *arose out of* activity while operations were in progress.

F. **Defense and Settlement of the *Avery Ranch* Litigation**

32. To protect Neans and honor its contractual obligations on its policies, Scottsdale was forced to defended and indemnify Neans in the *Avery Ranch* Litigation without any participation from Mercury. Scottsdale now seeks a judgment declaring that Mercury has a duty to defend and indemnify Neans in the *Avery Ranch* Litigation. Scottsdale also seeks contribution and/or reimbursement from Mercury for the amounts it paid to defend and indemnify Neans. Scottsdale has an assignment from Neans to the extent of its payments.

## V.
## RELIEF REQUESTED

### A. Contribution & Contractual and Equitable Subrogation

33. Scottsdale incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

34. To protect Neans and honor its contractual obligations on its policies, Scottsdale was forced to defended and indemnify Neans in the *Avery Ranch* Litigation without any participation from Mercury. Per the terms of the respective policies and on the facts pled, and pursuant to its contribution rights and/or its legal subrogation rights, both under contract and in equity, Scottsdale is entitled to reimbursement of 100% of the expenses paid to defend Neans in the *Avery Ranch* Litigation. Scottsdale is also entitled to reimbursement for 100% of the indemnity it paid on behalf of Neans to settle the *Avery Ranch* Litigation, as this amount does not exceed the sum of: (a) The total amount that all Subcontractor Policies would pay for the loss; and (b) The total of all deductible and self-insured amounts under all Subcontractor Policies.

### B. Declaratory Judgment

35. Scottsdale incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

36. Scottsdale requests that the Court declare the parties' rights and obligations under the Scottsdale and Subcontractor Policies, as provided by 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure.

37. Specifically, Scottsdale seeks a declaration that:

    a. Neans is an Additional Insured under each of the Subcontractor Policies with respect to the *Avery Ranch* Litigation;

    b.  Mercury is Neans' primary insurer and Scottsdale is Neans' excess insurer with respect to the *Avery Ranch* Litigation;

    c.  Mercury owed a full and complete defense to Neans as an Additional Insured under the Subcontractor Policies for the *Avery Ranch* Litigation;

    d.  Mercury must reimburse Scottsdale for attorneys' fees, costs, and expenses it has incurred in defending Neans in the *Avery Ranch* Litigation;

    e.  Mercury owed Neans indemnity under the Subcontractor Policies for any settlement or judgment that was entered in the *Avery Ranch* Litigation;

    f.  Mercury must reimburse Scottsdale for any indemnity payment it made on behalf of Neans in the *Avery Ranch* Litigation in excess of the sum of: (a) The total amount that all Subcontractor Policies would pay for the loss; and (b) The total of all deductible and self-insured amounts under all Subcontractor Policies.

38.    Scottsdale is entitled to receive its costs and reasonable and necessary attorneys' fees and expenses it incurred prosecuting this lawsuit. *See* TEX. CIV. PRAC. & REM. CODE § 37.009.

### C. Breach of Contract

39.    Mercury issued contracts of insurance that required it to defend and indemnify Neans. Mercury breached its contract by virtue of it wrongful denial of defense and indemnity for the claims asserted against Neans in the *Avery Ranch* Litigation. Pursuant to its own insurance contract and/or equitable principles, Scottsdale is entitled to stand in the shoes of its insured and assert a right to recover from Mercury the costs incurred in defense and settlement of the claims against Neans.

40. Scottsdale has been damaged in the amount of defense and indemnification costs Mercury should have – but for its wrongful denial of coverage – provided on behalf of Neans. Scottsdale hereby asserts all statutory, contractual and/or equitable claims, as well as principles of *quantum meruit* and *unjust enrichment*, under which it may be entitled to recover said damages from Mercury.

41. Scottsdale is also entitled to receive its costs and the reasonable and necessary attorneys' fees it incurred prosecuting this lawsuit pursuant to Section 38 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE § 38.001.

### D. Waiver and Estoppel

42. Mercury has waived and is estopped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights letter to Neans.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Scottsdale respectfully requests that the Court render a judgment declaring the above requested relief, and enter judgment that Scottsdale recover from Mercury 100% of the amounts its incurred in the defense and indemnity of Neans; for its reasonable attorney fees, pre- and post-judgment interest and costs of court; and for all such other and further relief as Scottsdale may show itself justly entitled to receive..

       Respectfully submitted,

         *s/ Peri H. Alkas*

By:_____
       Peri H. Alkas
       ATTORNEY-IN-CHARGE
       State Bar No. 00783536
       Federal Bar No. 15785
       PHELPS DUNBAR LLP
       500 Dallas, Suite 1300
       Houston, Texas 77002
       Telephone (713) 626-1386
       Facsimile (713) 626-1388
       Email: alkasp@phelps.com

**ATTORNEY-IN-CHARGE FOR PLAINTIFF, SCOTTSDALE INSURANCE COMPANY**

**OF COUNSEL:**
Ashley M. Parker
TBN: 24081085
Federal Bar No. 1512920
PHELPS DUNBAR LLP
Ashley.parker@phelps.com

- 15 -